**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-4182**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BRANDON STEPHON BROWN,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  John A. Gibney, Jr., Senior District Judge.  (3:23-cr-00094-JAG-1)

Submitted:  March 30, 2026                                     Decided:  July 20, 2026

Before AGEE, HARRIS, and RUSHING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Geremy C. Kamens, Federal Public Defender, Patrick L. Bryant, Assistant Federal Public Defender, Joseph S. Camden, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Ellen V. Hubbard, Special Assistant United States Attorney, Vetan Kapoor, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Brandon Stephon Brown appeals his conviction for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He contends that the district court erred in denying his pretrial motions to dismiss the indictment based on an alleged violation of the Speedy Trial Act and to suppress certain physical evidence.[1] We affirm.

"We review the district court's interpretation of the Speedy Trial Act de novo, and any related factual findings for clear error." *United States v. Burgess*, 684 F.3d 445, 450 (4th Cir. 2012). The Act provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). "If the Government fails to comply with this requirement, the 'complaint shall be dismissed or otherwise dropped.'" *United States v. Woolfolk*, 399 F.3d 590, 594 (4th Cir. 2005) (quoting 18 U.S.C. § 3162(a)(1)).

---

[1] Brown also raised facial and as-applied Second Amendment challenges based on *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022) (holding that a firearm regulation is valid under the Second Amendment only if it "is consistent with this Nation's historical tradition of firearm regulation"), which the district court denied. Though Brown renews his *Bruen* claims on appeal, he correctly concedes that they are foreclosed by our decisions in *United States v. Canada*, 123 F.4th 159, 161 (4th Cir. 2024) (holding that "Section 922(g)(1) is facially constitutional because it has a plainly legitimate sweep and may constitutionally be applied in at least some set of circumstances" (internal quotation marks omitted)), and *United States v. Hunt*, 123 F.4th 697, 702 (4th Cir. 2024) (reaffirming our pre-*Bruen* "precedent foreclosing as-applied challenges to Section 922(g)(1)"), *cert. denied*, 145 S. Ct. 2756 (2025).

2

In March 2023, Brown was placed in state custody following his arrest on suspicion of unlawfully possessing a firearm. In June, a Virginia grand jury charged him with a felon-in-possession offense. In July, a federal grand jury indicted Brown on the instant § 922(g)(1) charge. Soon thereafter, the state charge was dismissed, and Brown was placed in federal custody.

As he did below, Brown maintains that his time spent in state custody was countable under the Speedy Trial Act because, in his view, the state charge was merely a placeholder for the federal charge. In support, Brown noted that he was arrested by a Richmond Police Department detective who also served as a task force officer for the Federal Bureau of Investigation (FBI). During Brown's arrest, the detective advised Brown of his FBI connection and claimed that he would decide whether Brown went to state prison or federal prison. According to Brown, these comments gave his arrest a federal dimension.

Section 3161(b)'s 30-day period is triggered if the defendant is federally arrested on a federal charge, *Woolfolk*, 399 F.3d at 594, or if the defendant "is held by state authorities solely to answer to federal charges" and the Government knows of the defendant's detention, *id.* at 596. The district court found, as a factual matter, that Brown was arrested on a state charge and was being prosecuted in state court. In other words, Brown's arrest was not federal, nor was he being held in state custody solely for purposes of a federal prosecution. We discern no clear error in the district court's factual findings, *see United States v. Lawson*, 128 F.4th 243, 249 (4th Cir. 2025) ("We can find clear error only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." (citation modified)), so we affirm the denial of Brown's speedy trial motion.

3

"When the district court denies a motion to suppress, we review its legal conclusions de novo and factual findings for clear error, considering the evidence in the light most favorable to the government." *United States v. Henderson*, 136 F.4th 527, 531 (4th Cir. 2025) (internal quotation marks omitted). In assessing the constitutionality of a brief investigatory stop—commonly known as a *Terry*[2] stop—"we ask whether, at the time of the seizure, the police officer had a 'reasonable suspicion' that the person seized was 'involved in criminal activity.'" *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018). "Reasonable suspicion requires more than an inchoate and unparticularized suspicion or hunch; rather, the government agent must articulate a particularized, objective basis for his or her actions." *Id.* (internal quotation marks omitted). "To determine whether an officer had such a basis for suspecting legal wrongdoing, reviewing courts must look at the totality of the circumstances of each case." *Id.* (citation modified).

On the night of Brown's arrest, four Richmond police detectives were patrolling an apartment complex where a homicide had recently occurred. Brown was standing near an outdoor breezeway as two of the officers walked in his direction. One of the officers testified that he saw Brown make a sudden movement into the breezeway, then heard an object hit the ground. The officer moved into the breezeway and observed a firearm on the floor. At nearly the same time, the other two officers converged on Brown from the opposite side of the breezeway.

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

4

Brown disputes that the officers had reasonable suspicion to stop him. First, he claims that he was seized prior to his gun hitting the ground. As Brown points out, one of the officers drew his service weapon several seconds before Brown dropped his gun. However, video from one of the officers' body-worn cameras shows that Brown could not see the officer's gun—which the officer reholstered within seconds—because Brown's back was turned. Given that Brown was unaware that one of the officers briefly drew his weapon, we conclude that Brown's liberty was not restrained by the officer's temporary show of authority. *See Terry*, 392 U.S. at 19 n.16 ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.").[3]

Next, Brown argues that, even if he was seized only after dropping his gun, the officers still lacked reasonable suspicion. We disagree. The district court found that Brown "t[ook] a sudden movement [into the breezeway] as if he was thinking about getting away." (J.A.[4] 143); *see United States v. Bumpers*, 705 F.3d 168, 175 (4th Cir. 2013) ("Evasive conduct, although stopping short of headlong flight, is still an important factor for a court to consider when making a reasonable suspicion determination." (citation modified)). Soon thereafter, the officers "heard the clank of the gun hitting the ground."

---

[3] As Brown notes, the district court did not make an express finding as to when he was seized. However, in our view, the court implicitly rejected Brown's argument that he was seized prior to dropping his gun, since the court cited the dropped gun as a factor supporting the officers' reasonable suspicion.

[4] Citations to "J.A." refer to the joint appendix filed by the parties in this appeal.

5

(J.A. 144). In isolation, a dropped gun might indicate nothing more than an accident. But a dropped gun immediately following a "sudden movement" (J.A. 143) away from police officers could, in the words of the district court, lead a reasonable officer to suspect that Brown was "trying to get rid of the gun" because he was "not . . . allowed to have one," (J.A. 137).

The district court also relied on testimony that the apartment complex was a "high-crime area." (J.A. 144). It is true, as Brown contends, that "a person's presence in a high-crime area cannot alone create reasonable suspicion to justify a *Terry* stop." *United States v. Curry*, 965 F.3d 313, 331 (4th Cir. 2020) (en banc). Still, "the high-crime reputation of an area and the late hour of a police encounter can contribute to a finding of reasonable suspicion." *United States v. Foster*, 824 F.3d 84, 92 (4th Cir. 2016) (internal quotation marks omitted). And here, the high-crime reputation of the apartment complex was just one factor informing the district court's analysis.

Finally, Brown insists that "[b]eing a felon in possession of a firearm is not the default status." *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013); *see id.* ("[W]here a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention."). But again, the officers did not detain Brown simply because they saw him carrying a firearm. Rather, they detained him because he took a sudden movement away from them, then dropped the firearm on the ground. We are satisfied that these actions provided the officers with enough reasonable suspicion to conduct a *Terry* stop.

6

Accordingly, we affirm the district court's judgment.   We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*